## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

DERRICK RAY,

        Plaintiff,

vs.                              Case No. 3:20-cv-857-MMH-LLL

BRIDGESTONE RETAIL
OPERATIONS, LLC d/b/a
Tires Plus Total Car Care,

        Defendant.

_____/

## O R D E R

**THIS CAUSE** is before the Court on Plaintiff's Statement of Cause (Doc. 103; Statement of Cause), filed September 8, 2022; and Defendant Bridgestone's Reassertion of Motion for Sanctions and Response to Plaintiff's Response to Order to Show Cause (Doc. 104; Second Motion for Sanctions), filed September 26, 2022. Plaintiff Derrick Ray filed the Statement of Cause in response to the Court's Order to Show Cause (Doc. 102; Order to Show Cause) why this case should not be dismissed for failure to prosecute based on Mr. Ray's failure to appear for jury selection and trial at 9:00 a.m. on August 30, 2022, as ordered. After Mr. Ray failed to timely respond to the Second Motion for Sanctions, the Court ordered him to do so on or before November 4, 2022. See Order (Doc. 105; Order of Oct. 19, 2022), filed October 19, 2022. On November 2, 2022, Mr. Ray

filed Plaintiff's Response to the Court Order 104 (Doc. 106; Response to the Second Motion for Sanctions) and Grievances to the Court and Fraudulent Actions (Doc. 107; Grievances).  Accordingly, this matter is ripe for review.

## I.   Procedural History

Mr. Ray, represented by counsel, initiated this civil rights action under 42 U.S.C. §§ 1981, 1982, and 1988 on July 31, 2020, by filing a Complaint (Doc. 1; Complaint).  In the Complaint, Mr. Ray alleges that, on July 24, 2020, Defendant Bridgestone Retail Operations, LLC (Bridgestone), discriminated against him on the basis of his race when a Bridgestone employee did not allow him to purchase tires for his "project car" using his bank card. See generally id. Bridgestone filed an answer to Mr. Ray's Complaint on September 29, 2020. See Defendant's Answer and Affirmative Defenses to Plaintiff's Complaint (Doc. 15).  Subsequently, on January 7, 2021, Mr. Ray's counsel withdrew.  See Motion to Withdraw as Counsel (Doc. 16), filed January 6, 2021; Order (Doc. 18), filed January 7, 2021.  On that same date, the Honorable James R. Klindt, United States Magistrate Judge, entered an order informing Mr. Ray that as a pro se litigant he must comply with procedural rules and "with all orders of this Court."  Order (Doc. 19; Order of Jan. 7, 2021) at 1, 5.  Judge Klindt also explained that failure to comply with the Court's orders "may result in sanctions, including dismissal of this case." Id. at 5.  New counsel appeared on behalf of Mr. Ray on January 13, 2021, see Notice of Appearance (Doc. 20), but

withdrew from representation about a month later, <u>see</u> Motion to Withdraw as Counsel (Doc. 22), filed February 24, 2021; Order (Doc. 23), filed February 25, 2021. Because Mr. Ray would again be representing himself, Judge Klindt entered another order reminding him that failure to comply with Court orders could "result in sanctions, including dismissal of this case." Order (Doc. 24; Order of Feb. 25, 2021) at 1, 5, filed February 25, 2021.

On April 6, 2021, Bridgestone moved to compel the production of documents it had requested in discovery served on <u>November 5, 2020</u>, and sought an award of attorneys' fees and costs pursuant to Rule 37(a)(5) of the Federal Rules of Civil Procedure (Rule(s)). <u>See</u> Defendant's Motion to Compel Production of Documents from Plaintiff and Request for Sanctions (Doc. 25; First Motion to Compel). Mr. Ray failed to respond to the First Motion to Compel within the time required by Local Rule 3.01(c), Local Rules of the United States District Court for the Middle District of Florida (Local Rule(s)) and did not request additional time to do so. Nevertheless, the Court, <u>sua sponte</u>, extended the deadline for Mr. Ray to respond to the First Motion to Compel to May 18, 2021. <u>See</u> Order (Doc. 26), filed April 27, 2021. On May 4, 2021, Bridgestone moved to compel an inspection of Mr. Ray's project car and again requested an award of attorneys' fees and costs. <u>See</u> Defendant's Motion to Compel Inspection of Vehicle and Request for Sanctions (Doc. 27; Second Motion to Compel). The Court, <u>sua</u> <u>sponte</u>, set May 26, 2021, as the deadline

for Mr. Ray to respond to the Second Motion to Compel.  <u>See</u> Order (Doc. 28), filed May 5, 2021.  On May 14, 2021, Mr. Ray filed a response that read in its entirety, "The outstanding discovery being requested is irrelevant to the occurrences of July 24, 2020."  Response (Doc. 29).

On June 23, 2021, Judge Klindt held a two-hour hearing on the motions to compel and, in the end, took the motions under advisement.  <u>See</u> Clerk's Minutes (Doc. 31; Minutes of June 23, 2021), filed June 23, 2021.  On July 20, 2021,[1] Judge Klindt granted, in part, and denied, in part, the Second Motion to Compel.  <u>See</u> Order (Doc. 37; Order of July 20, 2021).  Specifically, Judge Klindt granted Bridgestone's request to inspect the project car no later than August 6, 2021,[2] but declined to award attorneys' fees and costs.  <u>Id.</u> at 8.  On August 3, 2021, Judge Klindt granted, in part, and denied, in part, the First Motion to Compel.  <u>See</u> Order (Doc. 38; Order of Aug. 3, 2021).  Among many other items, Judge Klindt ordered Mr. Ray to produce telephone records related to the telephone calls alleged in the Complaint, <u>see id.</u> at 4–5, and to produce all the information identified in the order no later than August 20, 2021, <u>see id.</u> at 8–9.  With respect to the telephone records, Judge Klindt ruled,

---

[1]  The day before, on July 19, 2021, Judge Klindt struck requests for production that Mr. Ray had filed on the Court's docket in violation of the Court's Local Rules.  <u>See</u> Order (Doc. 35; Order of July 19, 2021).

[2]  Bridgestone completed the inspection on August 4, 2021.  <u>See</u> Defendant's Motion for Sanctions (Doc. 40) at 2.

> **Request No. 15:** All documents, including telephone records, relating to the telephone calls alleged in the Complaint at paragraphs ten through fourteen.
>
> Id. at 10.  The Motion is granted as to Request No. 15.  As discussed at the June 23, 2021 hearing, if Plaintiff did not save or unintentionally deleted any messages off his phone, Plaintiff may need to contact his telephone provider to inquire whether any records were saved and/or stored.  Additionally, Plaintiff may need to search any storage he may have (for example on a computer on iCloud storage).  Further, the records must show who Plaintiff called or communicated with (by showing telephone numbers or the like).  If Plaintiff does not possess any document(s) as described above in Request No. 15, he must simply state so, but Plaintiff is reminded to diligently search for any document(s) as previously discussed (such as contacting his telephone provider or searching through any computer storage).

Id. at 4–5.  Although Judge Klindt again declined to award attorneys' fees and costs, he cautioned Mr. Ray "that future issues regarding discovery may warrant awarding Defendant's attorneys' fees and costs as well as other potential sanctions."  Id. at 8.

On August 26, 2021, citing Mr. Ray's discovery delays, Bridgestone moved to extend the deadline for completion of discovery.  See Defendant's Motion to Extend Discovery Deadline (Doc. 39: Motion for Extension).  Although Mr. Ray advised Bridgestone's counsel that he opposed the requested extension of time, he never filed a response to the Motion for Extension.  Id. at 6.  Bridgestone also moved for sanctions, "including dismiss[al] of this action with prejudice and payment of attorneys' fees and costs" based upon Mr. Ray's "failure to participate in discovery and comply with the Court's August 3, 2021 Order."

Defendant's Motion for Sanctions (Doc. 40; First Motion for Sanctions) at 15, filed August 26, 2021.  According to Bridgestone, since the Order of August 3, 2021, Mr. Ray had "failed to produce any additional discovery as directed by the Court." Id. at 3.

On October 19, 2021, Judge Klindt granted Bridgestone's Motion for Extension.  See Order (Doc. 51; First Order of Oct. 19, 2021).  Specifically, he extended the discovery deadline and gave Mr. Ray up to and including November 9, 2021, to respond to additional discovery requests that Bridgestone had served on August 5, 2021.  Id. at 5.  Judge Klindt also reminded Mr. Ray that failing to respond to those discovery requests "will subject him to sanctions." Id.

While the Motion for Extension was pending, Mr. Ray unilaterally filed an amended complaint.  See Retaliation Complaint (Doc. 41), filed on September 1, 2021.  Judge Klindt struck the amended complaint for failing to comply with Rule 15 as it was filed without "leave of court or written consent of Defendant." Order (Doc. 43; Order of Sept. 10, 2021), filed September 10, 2021. In the Order of September 10, 2021, Judge Klindt observed that a previous Court order had been returned as undeliverable because Mr. Ray "[e]vidently" had changed his mailing address.  Id. at 2.  Therefore, Judge Klindt ordered Mr. Ray to file a notice of change of address on or before September 30, 2021, "failing

which the Court may dismiss his case for failure to prosecute." <u>Id.</u> at 2–3.  Mr.

Ray did not do so.

In a separate order also entered on October 19, 2021, Judge Klindt

addressed this failure as well as Mr. Ray's failure to respond to a pending

motion.  <u>See</u> Order (Doc. 52; Second Order of Oct. 19, 2021).  Judge Klindt noted

that Mr. Ray had not filed a notice of change of address, as directed by the Order

of September 10, 2021.  <u>Id.</u> at 1.  Because Mr. Ray included his updated mailing

address in some of his new filings, Judge Klindt excused his failure.  <u>See</u> <u>id.</u>

However, Judge Klindt again cautioned Mr. Ray that "**noncompliance with**

**the Court's Orders can result in sanctions up to and including**

**dismissal of this case.**" <u>Id.</u> (emphasis in original).  In addition, Judge Klindt

observed that Mr. Ray had not timely responded to the First Motion for

Sanctions. <u>Id.</u> at 1–2. Judge Klindt gave Mr. Ray up to and including November

5, 2021, to file a response.  <u>Id.</u> at 2.  Mr. Ray then filed a response to the First

Motion for Sanctions; however, it did little to respond to the substantive

arguments presented by Bridgestone.  <u>See</u> Response to Bridgestone's Motion for

Sanction (Doc. 53), filed on November 4, 2021.  About one week later, because

the First Motion for Sanctions remained pending before the Court, Bridgestone

filed a notice contending that on November 8, 2021, Mr. Ray had provided

"deficient discovery responses" not in compliance with the Court's Order of

October 19, 2021.  See Defendant's Notice of Plaintiff's Non-Compliance with Court Order (Doc. No. 51) (Doc. 57), filed November 10, 2021.

On November 15, 2021, this case was reassigned from Judge Klindt to the Honorable Laura Lothman Lambert, United States Magistrate Judge.  After the reassignment, Judge Lambert entered an order requesting supplemental information from both parties about the First Motion for Sanctions and specifically cautioned Mr. Ray: "**The Plaintiff is reminded that he has been previously ordered to provide discovery to defendant and is again warned that noncompliance with this Court's orders can result in sanctions up to and including dismissal of this case.**"  Order (Doc. 61; Order of Jan. 25, 2022) at 2–3, filed January 25, 2022 (emphasis in original). Both parties timely filed the required supplements.  See Defendant's Supplemental Briefing on Defendant's Motion for Sanctions (Doc. 62), filed February 1, 2022; Plaintiff's Supplemental Briefing in Response to Defendant's Motion for Sanctions (Doc. 63; Ray's Supplement), filed February 10, 2022.  In his supplement, in addition to addressing the disputed discovery, Mr. Ray argued that the Court was operating under a conflict of interest with one of Bridgestone's attorneys, Ms. Valeen Arena,[3] who had been a law clerk to

---

[3] During the course of the litigation, this attorney changed her name to "Valeen Hyde." Nevertheless, because Mr. Ray consistently refers to her using her former name, the Court will refer to "Ms. Arena" in this Order.

another federal district judge in Jacksonville.  <u>See</u> Ray's Supplement at 3–4. One week after Mr. Ray filed his supplement, Ms. Arena withdrew from representing Bridgestone because she was leaving her employment with the law firm representing Bridgestone.  <u>See</u> Motion to Withdraw as Counsel and for Termination of Electronic Notices (Doc. 64), filed February 17, 2022; Endorsed Order (Doc. 65), filed February 22, 2022.

Judge Lambert set the matter for a hearing and again reminded Mr. Ray "**<u>that he has been previously ordered to provide discovery to defendant and is again warned that noncompliance with this Court's orders can result in sanctions up to and including dismissal of this case.</u>**"  Order (Doc. 66; Order of Feb. 24, 2022) at 2, filed February 24, 2022 (emphasis in original).  After the hearing, Judge Lambert found that two items of discovery that the Court had previously ordered to be disclosed remained outstanding, including records related to the telephone calls alleged in the Complaint.  <u>See</u> Order (Doc. 71; Order of Mar. 11, 2022) at 2–3, filed March 11, 2022.  Judge Lambert ordered Mr. Ray to produce those documents to Bridgestone no later than March 24, 2022.  <u>Id.</u> at 4. Nevertheless, despite Mr. Ray having failed to comply with the Court's previous order to produce the requested documents, Judge Lambert denied without prejudice the First Motion for Sanctions.  <u>Id.</u> at 2.  In doing so, Judge Lambert declined to recommend dismissal of the case in light of Mr. Ray's "status as a pro se litigant, his reasoning, and his explanations

for not providing the remaining discovery." Id. at 3.  She also found that awarding attorney's fees and costs would be unjust "at this juncture" and considered "defendant's assertion that a monetary sanction is unlikely to be effective." Id.  To assure that the discovery was completed in a timely manner, Judge Lambert required the parties to each file a status update about discovery, and directed that, "[i]f applicable, defendant shall notify the Court if he intends to re-assert his request for sanctions." Id. at 4.  Judge Lambert concluded the order by again reminding Mr. Ray that failure to provide the discovery as directed by the Court may result in sanctions.  See id.

On March 22, 2022, Mr. Ray filed his status update in which, among other statements, he represented that his phone service provider could not provide "telephone call log records" because "it has been over 18 months since the call where made."[4]  Plaintiff's Response to Defendant's Motion for Sanction (Doc. 72; Ray's Status Update) at 3.  Bridgestone filed its status update on March 30, 2022.  See Defendant's Discovery Status Update (Doc. 73).  Bridgestone noted that Mr. Ray had provided several new responsive documents, proving, according to Bridgestone, that Mr. Ray "possessed and willfully failed to produce discoverable materials even after clear orders from the Court." Id. at

---

[4]  The Court will not attempt to alter Mr. Ray's quotations or note typographical or grammatical errors given the number of quotations and the number of errors.

2–3.  Regarding the telephone records, Bridgestone asserted that, "[i]f relevant evidence has been lost due to passage of time, it was avoidable." Id. at 3.  In accordance with the Order of March 11, 2022, Bridgestone reasserted its request for dismissal under Rule 41(b) as a sanction for Mr. Ray's noncompliance. Id.

On March 2, 2022, in light of the effects of the COVID-19 pandemic and noting the procedural posture of the case, the undersigned continued the final pretrial conference and the trial.[5]  See Order (Doc. 69; Order of Mar. 2, 2022). The Court set July 11, 2022, as the deadline for the "Joint Final Pretrial Statement" required by Local Rule 3.06. Id. at 1.  Instead of submitting a joint pretrial statement, the parties submitted separate, unilateral pretrial statements.  See Defendant's Final Pretrial Statement (Doc. 75; Bridgestone's Pretrial Statement), filed July 11, 2022; Plaintiff's Pretrial Statement (Doc. 76; Ray's Pretrial Statement), filed July 11, 2022.  In emails dated June 21 and June 24, 2022, Mr. Ray refused to work with Bridgestone's counsel to prepare the required joint statement.  See Bridgestone's Pretrial Statement, Ex. A (Doc. 75-1; Emails About Pretrial Statement) at 2–3.

---

[5]  While Judge Lambert was resolving the First Motion for Sanctions, Defendant's Motion for Summary Judgment (Doc. 54; Motion for Summary Judgment) was pending before the undersigned.  The undersigned struck Mr. Ray's original response to the Motion for Summary Judgment.  See Order (Doc. 59; Order of Nov. 30, 2021), filed November 30, 2021. After Mr. Ray filed a renewed response, the Court denied the Motion for Summary Judgment on May 26, 2022, finding that there were genuine issues of material fact that would need to be resolved by a jury.  See Order (Doc. 74).

Although the Court could have stricken the improper separate statements, in an effort to move the case forward to trial, the Court declined to do so and instead held a two-and-one-half-hour-long final pretrial conference on July 18, 2022.  See Clerk's Minutes (Doc. 77; Minutes of Final PTC), filed July 18, 2022.  At the final pretrial conference, the Court first discussed the "Concise Statement of Each Party's Position" in Mr. Ray's Pretrial Statement.  See Final Pretrial Conference (Doc. 110; Tr. of July 18, 2022) at 5.  In his statement of the parties' positions, Mr. Ray included complaints about the litigation and discovery process, as well as complaints about Bridgestone's current counsel Mr. Coughlin and Bridgestone's former counsel Ms. Arena.  See id.  The Court explained to Mr. Ray that those grievances were not part of the claims raised in the Complaint and would not be part of the case tried before the jury.  See id. The Court asked Mr. Ray, "Do you understand that?"  Id.  He replied, "Understood."  Id.

Next, the Court addressed the exhibit list that Mr. Ray submitted.  See id. at 6.  The Court explained that many of the exhibits listed were not relevant trial evidence:

> In your exhibits you have -- for example, you have Ms. Arena's -- looks like a little part of her bio.  That's not -- that doesn't go to anything that we're trying in this case.  There's -- that's document number 5.
> There's document number 6, which is a request for production; document number 7, which is correspondence from counsel; document number 8, which has to do with a fitness challenge.

>You've got document number 9, which is a response to your motion
>for leave to amend the complaint.  That's not -- that's not part of
>the evidence in the case.

Id. Mr. Ray responded by arguing that Ms. Arena organized the fitness challenge and it was relevant to the case even though "it had nothing to do actually with July 24th." Id. at 7.  The Court instructed him that the fitness challenge had nothing to do with the issues that would be before the jury.  See id. at 8.  Mr. Ray again said that he understood.  Id. at 8.  The Court further clarified: "[T]he only thing that this case is about is what happened with your attempt to purchase tires from Bridgestone.  It's not about how you interacted with Mr. Coughlin or Ms. Arena.  It's not about any -- it's not about anything else."  Id. at 11–12.  Mr. Ray replied, "Yes, ma'am.  I understand."  Id. at 12.  The Court also explained to Mr. Ray that it was not improper for Ms. Arena, a former law clerk to a different district judge, to have represented Bridgestone in this case.  See id. at 12–13.  When Mr. Ray expressed the view that "everything that falls under this case number should be recognized," referring to his complaints about opposing counsel and the discovery process, the Court stopped him:

>THE COURT: No, no, Mr. --
>
>MR. RAY: Okay.
>
>THE COURT: Okay, Mr. Ray. I'm trying to explain to you that
>we're going to -- I denied summary judgment because there was an
>issue of fact.  And the jury gets to decide the facts.  But the facts

> are what is pled in your complaint.  It's not up – it's not for the jury to hear about or to decide issues about how the case was litigated after you filed the complaint.
>
> The discovery process, the back-and-forth between you and Mr. Coughlin, that's not for the jury.  The Court has been deciding those issues along the way as appropriate.  But what happened after this case was filed, that's not part of the case that is before the Court.  It's not part of what the jury is going to decide.  And you need to understand and accept that, because I'm trying to explain to you, I'm not going to allow any of that at the trial because it's improper.  It's not evidence relevant to the claim pled in the complaint.  And the only thing that the jury is going to decide is whether that claim succeeds, and if so, what the damages are.  That's what the jury is for.  They're not there to judge how the case was litigated.

Id. at 13–14.  With that understanding, the Court told Mr. Ray that he would be required to file a revised exhibit list containing only things relevant to what happened leading up to and on July 24, 2020.  Id. at 14.  Mr. Ray replied that he understood, and the Court ordered him to file the amended exhibit list on or before July 25, 2022.  Id. at 14, 24.

At the pretrial conference, the Court also heard arguments about and ruled on Defendant's Omnibus Motion in Limine (Doc. 67; Motion in Limine).  See Tr. of July 18, 2022, at 30.  The Court excluded the testimony of Mr. Ray's mental health provider but specifically noted that Mr. Ray's other witness, Ms. Cassandra Lewis, could testify.  Id. at 33.  Consistent with the prior discussion of the issues to be tried before the jury, the Court ruled that evidence about the conduct of the lawyers in the case would be excluded.  Id. at 43.  Additionally,

the Court ruled that Mr. Ray could not present evidence about any settlement discussions. Id. at 42–43.

While the Court and Mr. Ray were discussing a photograph of one of Bridgestone's employees, Mr. Ray asked to return to the subject of the attorneys' conduct, stating that "it shouldn't be overlooked." Id. at 45. He once again alleged his contention that Ms. Arena had violated the law by working on this case. Id. The Court told Mr. Ray that he was wrong about that. Id. Mr. Ray insisted that Ms. Arena had violated Supreme Court Rule 7. Id. The Court explained that Supreme Court Rule 7 does not apply in this Court,[6] that former law clerks do not have any special influence, that Ms. Arena did not even clerk for the undersigned, and that the matter would not be discussed further. Id. at 45–46. Mr. Ray responded that the fitness challenge showed her "constituency with everyone within the court system." Id. at 46. The Court repeated that the fitness challenge was not evidence of anything and then tried to return to discussing the photograph of Bridgestone's employee, but Mr. Ray continued to focus on Ms. Arena:

> MR. RAY: . . . Maybe I don't quite understand the standard, but I'm working on it. And I appreciate your patience. But I just know that all of this that I've submitted to you in accord to -- and this prior -- prior lead attorney with Mr. Coughlin is in an actual

---

[6] At the time of the hearing, the Court understood Mr. Ray to be referring to a rule of the Florida Supreme Court, but later determined that he was referring to a rule applicable to attorneys who work and appear before the United States Supreme Court.

criminal -- criminal position with what they've done, what they've done to me.

THE COURT: I'm sorry, Mr. Ray, are you saying that Ms. Arena is criminal and has done something criminal?  Because that's a defamatory allegation.  It doesn't have anything to do with this case and I'm not aware of any criminal conduct.  I've told you repeatedly that there was nothing wrong with her being a lawyer in this case.  It wasn't criminal.  It wasn't a violation of the rules of ethics.

Id. at 52–54.

Later in the pretrial conference, Mr. Ray complained that he had not received a copy of Bridgestone's Pretrial Statement.  Id. at 73.  After Bridgestone's counsel confirmed that he had mailed the document to Mr. Ray and filed the document on the Court's docket, Mr. Ray stated that "[t]here's no record with PACER."  Id. at 74.  The Court told Mr. Ray that Bridgestone did submit a pretrial statement, said that the Court had retrieved it from PACER, and directed the courtroom deputy to provide Mr. Ray a copy of it.  Id. at 79. After Mr. Ray again questioned whether Bridgestone's Pretrial Statement was on PACER, the Court accessed the electronic docket and confirmed again that it was, indeed, present on PACER.  Id. at 79–80.  Despite this, Mr. Ray continued to assert that Bridgestone's Pretrial Statement was not on the docket, but the Court explained that he must have clicked on the wrong link.  Id. at 81.

On July 19, 2022, the Court entered an order memorializing the decisions announced at the final pretrial conference, including the rulings on the Motion

in Limine, and also directing both parties to "file their objections to the opposing party's exhibits no later than July 29, 2022."  Order (Doc. 79; Order of July 19, 2022) at 2–3.  The next week, on July 25, 2022, Mr. Ray asked the Court to reconsider its evidentiary rulings.  See In Consideration of the Court's Order Document Plaintiff's Notice to the Court for a Reconsideration of the Court's No.79 on Defendant's Omnibus Motion in Limine and Plaintiff's Amended Limine and Plaintiff's Amended Exhibit List (Doc. 82; First Motion for Reconsideration).  In the First Motion for Reconsideration, Mr. Ray accused the Court of "assisting Defendant" because of Ms. Arena's former employment as a law clerk.  Id. at 5, 7.  Mr. Ray also argued that the Court should allow him to introduce all of the evidence that he wishes, including evidence about Ms. Arena, the litigation process, and Defendant's statements at mediation as evidence of wrongdoing.  See id. at 4, 8 ("[A]ny attempts taken to disallow direct factually base evidence in a Discrimination Lawsuit in the present day would constitute Bias and Prejudice being that this evidence is reliably accurate and in compliance with the rules of evidence.").  Mr. Ray attached his amended exhibit list to the First Motion for Reconsideration.  See id. at 10.  Despite the Court's repeated instructions at the pretrial conference, Mr. Ray's amended exhibit list included the exhibits regarding discovery and the litigation of the case, his complaints about Bridgestone's counsel, the fitness challenge, Ms. Arena, etc.  Indeed, it included exactly the same items as his first exhibit list,

the majority of which the Court had ruled to be inadmissible.  <u>Compare</u> Ray's Pretrial Statement at 3–4, 9–11, <u>with</u> First Motion for Reconsideration at 10.

On July 29, 2022, the Court entered an Order Scheduling Trial (Doc. 85; Order Scheduling Trial).  On the first page, the Court stated that "[j]ury selection and trial shall commence on **Tuesday, August 30, 2022, at 9:00 a.m.**" <u>Id.</u> at 1 (emphasis in original).  The Court also ordered the parties to file their proposed jury instructions, voir dire, statement of the case, and verdict form on or before August 22, 2022.  <u>Id.</u>  As with any other order entered in the case, a copy was mailed to Mr. Ray at his address on the Court's docket.

Mr. Ray filed two documents on August 3, 2022.  In the first, Mr. Ray again contended that Bridgestone concealed its pretrial statement before the final pretrial conference.  <u>See</u> Notice of Defendant's Noncompliance (Doc. 86; Ray's Notice of Noncompliance) at 1–2.  The second document was another motion for reconsideration of the Court's evidentiary rulings.  <u>See</u> Plaintiff's Request to the Court for Reconsideration (Doc. 87; Second Motion for Reconsideration).  Mr. Ray maintained that "abiding by the Order (Document 79) set forth by the Court would deprive I Plaintiff of a fair Due Process." <u>Id.</u> at 1.  Mr. Ray also repeated many of the arguments that he made in his First Motion for Reconsideration about Ms. Arena, litigation and discovery disputes, and the admissibility and importance of the parties' settlement discussions as evidence of wrongdoing.  <u>See id.</u> at 2–7.

On August 11, 2022—well after the July 29, 2022 deadline—Mr. Ray filed his objections to Bridgestone's proposed exhibits. See Plaintiff's Objections to Defendant's Exhibit (Doc. 90; Ray's Objections). Mr. Ray also filed his response to Bridgestone's objections to his amended exhibit list. See Plaintiff's Dispute to Defendant's Objections of Plaintiff's Pretrial Exhibits (Doc. 91; Ray's Response to Objections), filed August 11, 2022. In his Response to Objections, Mr. Ray continued to argue that exhibits about Ms. Arena, the litigation process, and discovery issues were relevant. Id. at 3–6. He expressed dismay that "there is no favor for Justice" and that "there will be no fair Judgement from the Middle District Court." Id. at 7–8.

The Court held a hearing on August 16, 2022, to address Mr. Ray's filings. See Clerk's Minutes (Doc. 93; Minutes of Aug. 16, 2022), filed August 16, 2022; see also Motion Hearing (Doc. 111; Tr. of Aug. 16, 2022), filed May 10, 2023. The Court told Mr. Ray that it had set the hearing "in an abundance of caution" to try "to correct some of your misunderstandings, and also to make sure that you appreciate that whether you agree with the rulings" on the Motion in Limine "or not, you have to comply with them when we have a jury." Tr. of Aug. 16, 2022, at 3. The Court first addressed Mr. Ray's Notice of Noncompliance. See id. at 4. The Court again advised that Bridgestone had filed its pretrial statement and explained how Mr. Ray could see that from looking at the document itself. Id. at 5. In response, Mr. Ray began discussing his issues with

how Bridgestone conducted discovery.  See id. at 6–8.  The Court told Mr. Ray once again that the jury would not consider disagreements about discovery and then turned to some of the other misconceptions reflected in his filing.  See id. at 8.  For example, Mr. Ray suggested the Court had excluded Ms. Lewis as a witness, but the Court explained that the ruling was that Ms. Lewis could testify in court.  Id. at 8–9.  The Court also explained that Mr. Ray could not present her testimony via a sworn statement.  Id. at 10–11.

The Court next addressed the First Motion for Reconsideration and the Second Motion for Reconsideration.  See id. at 12.  The Court explained that it would conduct a trial about the claims in the Complaint, that is, whether Bridgestone violated §§ 1981 and 1982 when it refused to sell tires to Mr. Ray. Id. at 13–14.  The Court emphasized that the jury would not hear about how discovery was conducted because that is not part of the claims in the Complaint. Id. at 14.  The Court again instructed Mr. Ray that Ms. Arena did nothing improper by appearing in the case.  See id. at 18–21.  The Court told Mr. Ray, "So I'm just wanting you to understand that you're not going to talk about Ms. Arena's appearance as a lawyer in this case in front of the jury.  Do you understand that?"  Id. at 21.  Mr. Ray responded, "I understand what you're saying, Judge.  I understand your direction."  Id.  Nonetheless, Mr. Ray returned to his previous arguments about Supreme Court Rule 7.  Id. at 21–22. The Court reiterated that Supreme Court Rule 7 applies to lawyers who worked

for the United States Supreme Court, not to Ms. Arena, a former district court clerk. Id. at 22–23. Mr. Ray said he understood but repeatedly stated that he disagreed. Id. at 23. Mr. Ray also expressed his belief that the Magistrate Judge had shown bias toward Bridgestone when denying his motion to amend his complaint. Id. at 24. Mr. Ray then circled back to Ms. Arena: "And impartiality is impacted due to the fact of that -- the Mrs. Attorney for Bridgestone, because she shouldn't have been there . . . ." Id. at 25.

Toward the end of the hearing, the Court denied the First Motion for Reconsideration and the Second Motion for Reconsideration. See id. at 40. The Court also confirmed that jury selection would commence at 9:00 a.m. on August 30, 2022. See id. at 40–41. The Court explained how the trial would progress, including how Mr. Ray, proceeding pro se, would present his own testimony. Id. at 41. Mr. Ray interjected: "I respect what you said, Judge Howard, but at this point I'm not going to be treated fairly and accordingly here." Id. at 41–42.

Subsequently, on August 22, 2022, Mr. Ray complied with portions of the Order Scheduling Trial by filing his proposed jury instructions, voir dire, statement of the case, and verdict form. See Plaintiff's Trial Requirements (Doc. 100; Ray's Pretrial Submissions).

On August 30, 2022, the Court summoned a venire for jury selection. Mr. Ray was not present in the courtroom at 9:00 a.m. See Clerk's Minutes (Doc. 101; Minutes of Aug. 30, 2022), filed August 30, 2022; Jury Selection and Trial

Proceedings (Doc. 109; Tr. of Aug. 30, 2022), filed March 26, 2023.  The Court went on the record at 9:30 a.m. and noted the presence of Bridgestone's counsel, Bridgestone's corporate representative, and Ms. Lewis, a witness who appeared on behalf of Mr. Ray.  See Tr. of Aug. 30, 2022, at 2–3.  Ms. Lewis told the Court that she had spoken to Mr. Ray that morning to ensure she went to the right location.  Id. at 3.  The Court confirmed that Mr. Ray had not contacted the Court or opposing counsel to explain his absence.  Id. at 3, 8.  At 9:53 a.m., noting that Mr. Ray had not appeared, the Court released the potential jurors.  See Minutes of Aug. 30, 2022.  At 9:58 a.m., as the potential jurors were exiting, Mr. Ray entered the courtroom.  See id.; Tr. of Aug. 30, 2022, at 12.  The Court asked Mr. Ray why he had not timely appeared:

> THE COURT: . . . Mr. Ray, the jury selection was scheduled for 9 a.m.  Why weren't you here, sir?
>
> MR. RAY: Because I have documents saying it was 10 a.m. trial process.  And I don't know how I misunderstood that, the same way like my last hearing, I made it here at 9 a.m.  And I sat here and the gentleman approached me and said, "Yeah, what are you waiting on?"
> I said, "I have a 9 o'clock hearing."
> And I went down to the 9th floor, and she said, "No, it was scheduled for 10," and that was in writing.
> So I've been getting misunderstandings with court times.

Tr. of Aug. 30, 2022, at 12–13.  When asked about his witness Ms. Lewis's punctual appearance, Mr. Ray represented that he had told her to be at the courthouse early "as a precautionary measure, to make [sure] she wasn't past

10 in getting here." Id. at 14.  Despite the Court repeatedly having ruled and explained to Mr. Ray that Ms. Lewis would be permitted to testify, he also asserted, "I wasn't even for sure if you were going to allow her to testify."  Id. Mr. Ray repeated that he had misunderstood:

> Judge Howard, that's correct.  I did misun- -- well, this would be the second time.  The last appearance I made I was actually an hour and 15 minutes early.  And I had to actually go downstairs to the 9th floor to the Clerk's office to reconfirm because there was a misprint on PACER.

Id. at 15–16 (emphasis added).  When the Court rejected Mr. Ray's assertion of a PACER misprint, Mr. Ray stated, "Maybe I misunderstood it."  Id. at 16.  In addition, Mr. Ray asserted that around 7:30 or 7:45 a.m. on the day of trial, he had tried to verify the start time by checking PACER but received an error message:

> MR. RAY: It was just blank with a red square, in error, "Can't take care of your request right now."  I was actually confirming, looking to confirm myself.  And I don't know how this mishap happened.  Possibility it's my mistake.
>
> THE COURT: We are advised when PACER is down.  I wasn't told that PACER was down.

Id. at 17.  After some further discussion, the undersigned ended the proceeding expressing an intention to enter an order to show cause why the case should not be dismissed.

Later that day, the Court entered the order directing Mr. Ray to show cause why the case should not be dismissed for failure to prosecute or why

sanctions should not be imposed.  <u>See</u> Order to Show Cause.  In his responsive Statement of Cause, Mr. Ray apologizes for his untimely appearance and states that he misread the Court's Order Scheduling Trial.  <u>See</u> Statement of Cause at 1.  Mr. Ray maintains that he attempted to check PACER on the morning of August 30, 2022, but received a red screen with the white letters "ERROR."  <u>Id.</u> He represents that his untimely appearance was unintentional and that he has been dealing with serious physical and mental conditions.  <u>See</u> <u>id.</u>  In the remaining four pages of his Statement of Cause, Mr. Ray expresses his complaints about the course of this litigation and the manner in which Bridgestone employees treated him.  <u>See</u> <u>id.</u> at 2–5.  He also expresses the distress both have caused him.  <u>Id.</u>

On September 26, 2022, Bridgestone filed its Second Motion for Sanctions, asking the Court to dismiss the case for failure to prosecute based upon Mr. Ray's failure to appear for jury selection and trial and to obey multiple Court orders.  <u>See</u> Second Motion for Sanctions at 1.  In the alternative, Bridgestone requests that the Court impose monetary sanctions.  <u>See</u> <u>id.</u>  Mr. Ray did not file a timely response but rather responded only after the Court entered an additional order noting his failure.  <u>See</u> Order of Oct. 19, 2022, at 1. In his Response to the Second Motion for Sanctions and Grievances, Mr. Ray does not address the substance of Bridgestone's arguments in support of dismissal.  Instead, he reasserts his frustrations with the litigation process and

discovery.  <u>See</u> Response to the Second Motion for Sanctions at 1; Grievances at 1–2.  He once again complains about Ms. Arena's former employment as a law clerk.  <u>See</u> Response to the Second Motion for Sanctions at 2; Grievances at 3–4.  With respect to his failure to appear for trial, Mr. Ray represents that he "did not show to Trial late purposely and there could have been a courtesy call as I Derrick Ray totally misread the start time of the Court process." Grievances at 5.  Mr. Ray also apologizes for his late arrival on August 30, 2022. <u>See id.</u> at 6.

## II.    Standard of Review

While <u>pro se</u> pleadings are held to a less stringent standard than those drafted by an attorney, <u>Wright v. Newsome</u>, 795 F.2d 964, 967 (11th Cir. 1986), the <u>pro se</u> litigant is still required to "conform to procedural rules." <u>Riley v. Fairbanks Cap. Corp.</u>, 222 F. App'x 897, 898 (11th Cir. 2007) (quoting <u>Loren v. Sasser</u>, 309 F.3d 1296, 1304 (11th Cir. 2002)).[7]  Rule 41(b) "authorize[s] a district court, on defendant's motion, to dismiss an action for failure to prosecute or to obey a court order or federal rule." <u>Manning v. Ga. Med. Billing Specialists, Inc.</u>, No. CV 204-186, 2005 WL 1638369, at *1 (S.D. Ga. July 12,

---

[7]  In citing to <u>Riley</u>, the Court notes that it does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060–61 (11th Cir. 2022); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

2005) (citing <u>Goforth v. Owens</u>, 766 F.2d 1533, 1535 (11th Cir. 1985)).  Pursuant to Rule 41(b), dismissal of an action is appropriate when there is a "clear record of delay <u>or</u> willful contempt <u>and</u> a finding that lesser sanctions would not suffice." <u>Goforth</u>, 766 F.2d at 1535 (emphasis added); <u>see also</u> <u>Kilgo v. Ricks</u>, 983 F.2d 189, 192 (11th Cir. 1993) (reversing dismissal under Rule 41(b) where the record did not support a finding of willful delay); <u>Hildebrand v. Honeywell, Inc.</u>, 622 F.2d 179, 181 (5th Cir. 1980).[8]  Rule 41(b) makes clear that a trial court has discretion to impose sanctions on a party who fails to adhere to court rules.  <u>See</u> Rule 41(b); <u>see also</u> <u>Goforth</u>, 766 F.2d at 1535.  However, that discretion is not unlimited, and the Court is mindful that dismissal with prejudice "is a sanction of last resort, applicable only in extreme circumstances, and generally proper only where less drastic sanctions are unavailable." <u>McKelvey v. AT & T Techs., Inc.</u>, 789 F.2d 1518, 1520 (11th Cir. 1986).  "A finding of such extreme circumstances necessary to support a sanction of dismissal must, at a minimum, be based on evidence of willful delay." <u>Id.</u>  "A party's simple negligence or other action grounded in a misunderstanding of a court order does not warrant dismissal." <u>EEOC v. Troy State Univ.</u>, 693 F.2d 1353, 1357 (11th Cir. 1982).  Moreover, the record must also support a finding

---

[8]  In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

"that lesser sanctions are inadequate to correct such conduct." <u>Betty K Agencies, Ltd. v. M/V Monada</u>, 432 F.3d 1333, 1339 (11th Cir. 2005) ("Our case law has articulated with crystalline clarity the outer boundary of the district court's discretion in these matters: dismissal with prejudice is plainly improper unless and until the district court finds a clear record of delay or willful conduct and that lesser sanctions are inadequate to correct such conduct.").

## III.   Discussion

Having carefully reviewed the record, the parties' briefing, and the applicable law, the Court concludes that this case is due to be dismissed.

### A.   Clear Record of Delay and Willful Contempt

Upon consideration of the record of Mr. Ray's actions in this case, the Court finds a clear record of delay and willful contempt of the Court's orders. Although the Court repeatedly instructed Mr. Ray about his obligations, he continually violated procedural rules and Court orders. Mr. Ray refused to fully and expeditiously fulfill his discovery obligations, forcing Bridgestone to file two meritorious motions to compel, a motion for an extension of the discovery deadline, and a motion for sanctions. <u>See</u> First Motion to Compel; Second Motion to Compel; Order of July 20, 2021; Order of Aug. 3, 2021; Motion for Extension; First Order of Oct. 19, 2021; First Motion for Sanctions. Indeed, on March 11, 2022, when ruling on the First Motion for Sanctions, Judge Lambert found that Mr. Ray still had not complied with the Order of August 3, 2021,

with regard to two of Bridgestone's discovery requests.  <u>See</u> Order of Mar. 11, 2022, at 2–3.  Mr. Ray also delayed the proceedings and showed disregard for the Court's rules by failing to respond to the First Motion to Compel, the Motion for Extension, and the First Motion for Sanctions within the time required by Local Rule 3.01(c).  Mr. Ray similarly disregarded the July 29, 2022 deadline that the Court set for objecting to Bridgestone's proposed trial exhibits.  <u>See</u> Order of July 19, 2022, at 2; Ray's Objections.  Even when faced with the Order to Show Cause and the Second Motion for Sanctions, Mr. Ray failed to file a timely response.  <u>See</u> Order of Oct. 19, 2022.  Mr. Ray ignored other orders from the Court as well.  When Judge Klindt ordered Mr. Ray to file a notice of change of address, Mr. Ray did not.  <u>See</u> Order of Sept. 10, 2021, at 2–3; Second Order of Oct. 19, 2021, at 1.  And despite a Court order directing the parties to submit a joint final pretrial statement, Mr. Ray refused to work with Bridgestone's counsel to prepare a joint statement.  <u>See</u> Order of Mar. 2, 2022, at 1; Emails About Pretrial Statement at 2–3.  Mr. Ray's conduct reflects a clear record of delay and disregard of the Court's procedural rules and orders.

Mr. Ray's unabashed delay of the discovery process in this case is significant and consequential.  On November 5, 2020, just months after the July 24, 2020 incident, Bridgestone served a request for production, seeking, among other items, telephone records related to the telephone calls alleged in the Complaint.  <u>See</u> First Motion to Compel at 3, 8, 10. After Mr. Ray failed to

produce these and other requested documents despite numerous extensions of time, on April 6, 2021, Bridgestone moved to compel the production and for sanctions.  See id. at 1, 4–7; Order of Aug. 3, 2021, at 4–5. Judge Klindt ordered Mr. Ray to produce the telephone records by August 20, 2021, and explained that Mr. Ray may need to obtain them from his telephone service provider if he no longer had them.  See Order of Aug. 3, 2021, at 4–5, 8.  Mr. Ray did not do so, which prompted Bridgestone to file the First Motion for Sanctions on August 26, 2021, seeking dismissal based upon Mr. Ray's failure to participate in discovery.  Only after Judge Lambert ruled on the First Motion for Sanctions and again ordered Mr. Ray to produce the phone records did Mr. Ray attempt to obtain them from his telephone service provider.  At that point, Mr. Ray's telephone service provider apparently advised him that the records were not available because the calls had been made over eighteen months earlier.  See Ray's Status Update at 3.  According to Mr. Ray's own representation, records of the July 18–24, 2020 calls would have been available in November of 2020 when Bridgestone first requested them, in August of 2021 when Judge Klindt ordered Mr. Ray to produce them, and presumably for the next five to six months.  Thus, Mr. Ray's refusal to comply timely with his discovery obligations and his failure to comply with Judge Klindt's order were consequential in that they resulted in the unavailability of evidence that Bridgestone diligently sought to obtain.  And, notably, the Court's cautions about the need to comply

with the Rules and Court orders and the potential of sanctions appear to have had little impact and certainly did not prevent the loss of evidence that Mr. Ray could and should have produced as ordered by the Court.

Most egregiously, Mr. Ray failed to make a timely appearance at the scheduled start of trial on August 30, 2022, at 9:00 a.m.  See Minutes of Aug. 30, 2022.  Mr. Ray's assertion that he misunderstood the start time to be 10:00 a.m. is not credible.  The Court gave Mr. Ray clear notice of the date and time for jury selection.  In the Order Scheduling Trial, the Court stated that "[j]ury selection and trial shall commence on **Tuesday, August 30, 2022, at 9:00 a.m.**" Order Scheduling Trial at 1 (emphasis in original).  The Court mailed a copy of the Order Scheduling Trial to Mr. Ray.  It is evident that Mr. Ray received the written Order Scheduling Trial because he complied with some of the directives set forth there by filing his statement of the case, voir dire, and jury instructions.  See Ray's Pretrial Submissions at 1.  Given the Court's repeated warnings about the importance of complying with the Court's orders, Mr. Ray knew he must read every order carefully.  Moreover, the docket text correctly noted that trial was set for August 30, 2022, at 9:00 a.m.  And, at the hearing held on August 16, 2022, the Court confirmed on the record that jury selection would commence at 9:00 a.m. on August 30, 2022.  See Tr. of Aug. 16, 2022, at 40–41.  Notably, Mr. Ray's witness Ms. Lewis arrived at the correct courtroom

by 9:00 a.m.[9]  See Tr. of Aug. 30, 2022, at 2–3, 14.  When Mr. Ray finally arrived after the Court had discharged the venire and excused Ms. Lewis and Bridgestone's corporate representative, he walked into the courtroom with no files, notebooks, or other materials that would suggest he was ready to present evidence to a jury.

Mr. Ray's explanations that his failure to appear on time was a result of a mistake or a misunderstanding are unworthy of credence.  Mr. Ray's initial response to the Court's inquiry about his tardiness was to state, "I have documents saying it was 10 a.m. trial process."  Id. at 12.  But no such document exists.  Indeed, as the Court noted in speaking to Mr. Ray, both the Court's Order Scheduling Trial and the Court docket correctly reflected the 9:00 a.m. start time.  Mr. Ray has never identified any document showing a 10:00 a.m. start time.

Mr. Ray's explanation about trying to check PACER on the morning of trial equally undermines the credibility of his assertion that his conduct was unintentional.  The Court is advised of PACER outages and received no notification that PACER was down.  See id. at 17.  In addition, it is inconceivable that Mr. Ray would check PACER and nothing else.  Mr. Ray does

---

[9] Given the surrounding circumstances, the Court does not credit Mr. Ray's assertion that he told Ms. Lewis to arrive at 9:00 a.m. only as a precaution to ensure that she arrived by 10:00 a.m.  See Tr. of Aug. 30, 2022, at 14.

not explain why, after supposedly being unable to see the information on PACER, he did not look at the Order Scheduling Trial he received in the mail. Nor does Mr. Ray state why he did not simply call the Court or opposing counsel to confirm the time.   Mr. Ray's explanation also is dubious because he has previously made demonstrably erroneous statements about PACER.   Mr. Ray insisted that Bridgestone's Pretrial Statement was not on PACER when it was.   See Tr. of July 18, 2022, at 73–81; Ray's Notice of Noncompliance at 1–2. Similarly, Mr. Ray alleged that PACER had a "misprint" about the time for the August 16, 2022 hearing.   See Tr. of Aug. 30, 2022, at 15–16.   But the Court rejected that contention because the time noted on PACER was accurate.   Mr. Ray says he misunderstood.    However, Mr. Ray never explains <u>what</u> he "misunderstood" about a time, "9:00 a.m.," typed in a written order mailed to him, reflected on the PACER docket, and read out loud to him in open court. The Court finds Mr. Ray's explanations regarding his failure to appear to be unpersuasive and unavailing.

The Court notes that Mr. Ray apparently has been living with mental and physical distress.   <u>See</u> Statement of Cause at 1.   Mr. Ray presents the Court with medical records from 2020 and 2021, as well as a record from August 31, 2022, the day after jury selection was scheduled.   <u>See</u> Statement of Cause, Ex. 1 (Doc. 103-1); Grievances, Ex. A (Doc. 107-1); Grievances, Ex. B (Doc. 107-2). None of those records establish that, on August 30, 2022, Mr. Ray had a medical

condition that rendered him unable to timely appear. Indeed, Mr. Ray has not actually argued that a mental or physical problem caused him to misunderstand the start time or to be delayed on the day of trial. Therefore, to the extent Mr. Ray wishes the Court to consider his medical history, the Court finds that Mr. Ray's medical conditions do not excuse his failure to appear on time.

In light of all of these circumstances, the Court concludes that Mr. Ray's failure to appear in a timely manner on the morning of his trial did not result from mere negligence or confusion. Rather, the record establishes that Mr. Ray was given ample notice of the time the trial was set to begin and that Mr. Ray knew the time that he was supposed to be present for jury selection but willfully chose not to appear. Mr. Ray's actions throughout the litigation of this case show a clear pattern of delay and willful disregard of the Court's orders. Thus, a severe sanction is warranted. See Gratton v. Great Am. Commc'ns, 178 F.3d 1373, 1374 (11th Cir. 1999) (per curiam) (affirming dismissal when the "the district court found that its orders had been ignored or responded to in a cavalier way by the plaintiff on at least four occasions"); Goforth, 766 F.2d at 1535 (holding that the record supported a finding of a pattern of delay and a deliberate refusal to comply with the court's directions when the plaintiff's counsel failed to submit a preliminary statement "[d]espite the court's repeated insistence" that he do so, "failed to appear for a pretrial conference in June 1984," and "disobeyed the court's instruction to be ready to proceed with trial

on September 17, 1984"); <u>Jones v. Graham</u>, 709 F.2d 1457, 1462 (11th Cir. 1983) ("The court was entitled to consider . . . the long pattern of conduct which amounted to want of prosecution and several failures by plaintiffs to obey court rules and orders."); <u>see also</u> <u>Wells v. Gourmet Servs. Inc.</u>, 748 F. App'x 235, 241 (11th Cir. 2018) (per curiam) ("[T]he district court did not abuse its discretion in dismissing Wells's FLSA claim as a sanction for his repeated refusal to comply with the district court's orders concerning email communications and his failure to fully comply with the show cause order.").

## B.   Inadequacy of Lesser Sanctions

The Court has considered the possibility of lesser sanctions and finds that none will suffice to serve the interests of justice.  Mr. Ray's contumacious behavior has persisted in the face of numerous warnings and orders from the Court.  Since Mr. Ray first began proceeding <u>pro se</u> in January 2021, the Court has advised, warned, and cautioned him that he must learn and follow procedural rules as well as abide by the Court's orders.  <u>See</u> Order of Jan. 7, 2021, at 1, 5; Order of Feb. 25, 2021, at 1, 5; Second Order of Oct. 19, 2021, at 1; Order of Jan. 25, 2022, at 2–3; Order of Feb. 24, 2022, at 2; Order of Mar. 11, 2022, at 4.  The Court has also spent hours in hearings with Mr. Ray, discussing procedural and evidentiary issues to no avail.  <u>See</u> Minutes of June 23, 2021 (2 hours, 4 minutes); Clerk's Minutes (Doc. 70), filed March 10, 2022 (1 hour, 41 minutes); Minutes of Final PTC (2 hours, 28 minutes); Minutes of Aug. 16, 2022

(1 hour, 18 minutes).  Mr. Ray continued to violate procedural rules and Court orders even after the Court struck five of his filings.  See Order of July 19, 2021; Order of Sept. 10, 2021; Order of Nov. 30, 2021.  Thus, the Court concludes that additional lesser sanctions would be futile.  See Jones, 709 F.2d at 1463 ("The court struck plaintiffs' first interrogatories for violation of its order limiting them to 100.  It took three court orders before plaintiffs filed a motion to voluntarily dismiss a named plaintiff who had died during the pendency of the action.  In the face of such demonstrated disregard of court orders, the court reasonably concluded that any further attempts to try lesser sanctions would be futile.").

The Court also finds that a lesser sanction would be inadequate in light of the prejudice to Bridgestone.  See Zocaras v. Castro, 465 F.3d 479, 484–85 (11th Cir. 2006) ("Because the rules of court protect not just the court but also the parties, it is entirely fitting to consider harm to other parties' interests in determining the sanction to be imposed for a violation of the rules.").  Bridgestone has expended considerable amounts on attorney's fees and costs to litigate discovery issues, appear at the pretrial conference as well as the subsequent pretrial hearing necessitated by Mr. Ray's unwillingness to accept the Court's rulings, prepare for trial, and appear at jury selection.  Bridgestone's corporate representative and witnesses had to take time away from their normal work responsibilities to prepare for trial and to appear in court.  See

Goforth, 766 F.2d at 1535 ("Defendants were physicians who had to cancel three days of appointments with patients to be present for trial.  If the continuance were granted, defendants would have been forced to cancel several additional days of appointments.").  Allowing this case to continue would result in further unwarranted costs and expenses for Bridgestone.  See Wells, 748 F. App'x at 241.  Given Mr. Ray's financial circumstances as reflected in the affidavit he filed in this case, the Court finds that he would be unable to cure the prejudice to Bridgestone through a sufficient monetary sanction.  See Affidavit of Financial Status (Doc. 46-1), filed October 5, 2021; Order of Mar. 11, 2022, at 3; First Motion for Sanctions at 12–13; Second Motion for Reconsideration at 7 ("Employment at this point has been ultimately compromised . . . ."); see also Martin v. Automobili Lamborghini Exclusive, Inc., 307 F.3d 1332, 1337 (11th Cir. 2002) ("Sanction orders must not involve amounts that are so large that they seem to fly in the face of common sense, given the financial circumstances of the party being sanctioned.").  Indeed, a significant monetary sanction also makes little sense in this case because Mr. Ray would likely not be able to recover extensive damages even if he prevailed at trial.

The Court has considered imposing a relatively light monetary sanction such as the cost of summoning the venire on August 30, 2022.  The cost to the Court was approximately $2,275.00.  But such a sanction likely would be equally cost-prohibitive for Mr. Ray given the state of his finances.  In addition,

such a light monetary sanction would not reflect the gravity of Mr. Ray's conduct throughout this case and in failing to appear as ordered for jury selection or cure the prejudice to Bridgestone. Moreover, as discussed below, no sanction is likely to alter Mr. Ray's conduct. See Wells, 748 F. App'x at 241 ("[T]he district court made clear in its dismissal order that even if Wells had demonstrated what amount of monetary sanctions he could pay, lesser sanctions still would not have sufficed, as they likely would not alter Wells's behavior and would 'at best' result in 'further unwarranted delays and . . . additional unwarranted litigation burden and expense.'"). And allowing this case to continue would subject Bridgestone's current and former counsel to more of Mr. Ray's allegations of unethical and criminal conduct. See generally, e.g., Grievances.

The Court also notes that Mr. Ray's discovery delays appear to have resulted in the spoliation of relevant evidence. As noted, in response to Judge Lambert's ruling on the First Motion for Sanctions, Mr. Ray represented that his telephone company could not produce certain records because over eighteen months had passed since the calls were made in July 2020. See Ray's Status Update at 3; Complaint ¶¶ 10–14. If Mr. Ray had diligently sought to obtain these records when Bridgestone first requested them in November 2020—or even in August 2021 when Judge Klindt first ordered Mr. Ray to produce

them—it appears that they would have been available and remained available for another five to six months after that order.

Finally, the Court concludes that lesser sanctions would not suffice because of Mr. Ray's unwillingness to understand, accept, and comply with the Court's rulings. At every turn, the Court tried to get this case to trial and to allow Mr. Ray to present his claims to a jury. At the pretrial conference, the Court ruled on the Motion in Limine and carefully explained what was relevant to Mr. Ray's case. See Tr. of July 18, 2022, at 5, 30. The Court informed Mr. Ray—repeatedly, patiently, and as clearly as possible—that discovery disputes and Ms. Arena's former employment and fitness challenge were not relevant to his case as pled in the Complaint. See id. at 5–6, 8, 11–13, 23–24, 45–46. Although Mr. Ray said he understood, see id. at 5, 8, 12, 14, he kept bringing up the same issues. The Court also told Mr. Ray why specific evidence and exhibits were inadmissible. See id. at 6, 23–24. Despite this ample instruction, Mr. Ray submitted an amended exhibit list with all of the same items. See First Motion for Reconsideration at 10. And, after the pretrial conference, Mr. Ray continued to argue about the litigation process, discovery disputes, the settlement negotiations, and Ms. Arena. See id. at 5; Second Motion for Reconsideration at 2–7; Ray's Response to Objections at 3–6.

Although the Court simply could have denied Mr. Ray's motions for reconsideration, the Court set a special motion hearing on August 16, 2022, to

attempt once again to explain what would be admissible at trial.  See Tr. of Aug. 16, 2022, at 3.  At the motion hearing, Mr. Ray would not accept the Court's rulings about the litigation process and discovery disputes, Ms. Arena, and the admissibility of settlement negotiations.  See id. at 6–8, 21–25, 31–36.  Even in his Statement of Cause and Response to the Second Motion for Sanctions, Mr. Ray continues to fixate on his complaints about the litigation and discovery process and Ms. Arena.  See Statement of Cause at 2; Response to the Second Motion for Sanctions at 1–2; Grievances at 1–4.  These are hardly the only examples of Mr. Ray's stubborn refusal to accept the Court's rulings and instructions.  Mr. Ray would not even accept the fact that Bridgestone timely filed its pretrial statement on the Court's docket.  See Tr. of July 18, 2022, at 73–81; Ray's Notice of Noncompliance at 1–2.

Mr. Ray has stated numerous times that he believes complying with the Court's orders will result in injustice, a denial of due process, and an unfair trial.  See, e.g., Ray's Response to Objections at 7–8 ("Plaintiff . . . has faced the fact that there will be no fair Judgement from the Middle District Court . . . ."); Grievances at 1 ("[H]ow can a Pro Se litigant be bound by Orders of the Court to submit personal information, that is irrelevant to the facts of the initial complaint, for the sole purpose of harassment and retaliation purposes . . . ."); Tr. of Aug. 16, 2022, at 41–42 ("I respect what you said, Judge Howard, but at this point I'm not going to be treated fairly and accordingly here.").  Because of

these beliefs, Mr. Ray has proven to be unable or unwilling to comply with the Court's evidentiary orders and procedural rules. No sanction could change Mr. Ray's opinions about the process, Bridgestone, and Bridgestone's counsel to such an extent that an orderly and fair trial conducted in compliance with the Federal Rules of Evidence, the Federal Rules of Civil Procedure, and this Court's orders would become possible. See Moon v. Newsome, 863 F.2d 835, 839 (11th Cir. 1989) ("The record supports what is implicit in the district court's decision to dismiss this case—that Moon had been repeatedly and stubbornly defiant. Moon's conduct and words evidence a refusal to acknowledge the authority of the magistrate and indicate no willingness to comply with court orders."). Indeed, given Mr. Ray's illogical and incredible explanation for his failure to appear for jury selection as ordered, the Court has no confidence that, if another jury were summoned, Mr. Ray would timely appear. Therefore, the Court concludes that sanctions other than dismissal with prejudice would not suffice.

Throughout the time of Mr. Ray's self-representation, the Court has been mindful of his pro se status and given him every opportunity to present his case to a jury. The Magistrate Judges explained Mr. Ray's obligations to comply with rules and Court orders. When he failed to do so in a timely manner, they gave him additional time, in some cases even without him asking for it. The undersigned has done so as well. When Mr. Ray failed to comply with his

discovery obligations and Court orders prompting motions to compel and for sanctions, the Magistrate Judges declined to impose sanctions in light of his pro se status and instead gave him more time to comply. And the undersigned spent four hours over the course of two hearings painstakingly explaining the issues to be tried, the admissible evidence, and the trial process so that Mr. Ray could have his day in court. But Mr. Ray opted to squander his opportunity.

The Court will not speculate as to the reason for Mr. Ray's failure to appear for trial as ordered. Counsel for Bridgestone suggests it reflects Mr. Ray's confidence in the strength of his case. That may or may not be true. But what is undeniably true is that Mr. Ray was ordered to appear before the Court at 9:00 a.m. on August 30, 2022, for a trial. Mr. Ray received the written order advising him of the start time and was reminded of the start time by the Court. The Court summoned twenty-three jurors who gave up their own personal plans for the day and appeared willing to serve as jurors to hear Mr. Ray's case. The Defendant's corporate representative, its counsel, and all Court personnel prepared to conduct a trial on Mr. Ray's claims and appeared in a timely manner to do so. Even Mr. Ray's witness was present having had make to arrangements for the care of her young baby in order to be present in court. Only Mr. Ray failed to appear as directed, and he has failed to provide any credible justification for his failure to do so. Mr. Ray's unwillingness or inability to comply with the Court's rules and orders has unreasonably and needlessly

delayed the litigation of this case, resulted in the unavailability of evidence sought by the Defendant, and led to the truly unfortunate waste of the willingness of twenty-three citizens to appear to serve as jurors. On this record, the Court must conclude that dismissal with prejudice is warranted.

## IV.   Conclusion

Pursuant to Rule 41(b), the Court will dismiss this case with prejudice because it has found a clear record of delay and willful contempt and that lesser sanctions would be inadequate. Accordingly, it is

**ORDERED:**

1.   Defendant Bridgestone's Reassertion of Motion for Sanctions and Response to Plaintiff's Response to Order to Show Cause (Doc. 104) is **GRANTED**.

2.   This case is **DISMISSED with prejudice**.

3.   The Clerk of the Court is **DIRECTED** to enter judgment dismissing the case with prejudice, terminate any pending deadlines and motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, on June 13, 2023.

**MARCIA MORALES HOWARD**
United States District Judge

lc30

Copies to:

Counsel of Record
Pro Se Parties